**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SCOTT ANDRESS, | : | |
|     *Plaintiff*, | : | CIVIL ACTION |
| | : | NO. 18-3691 |
| v. | : | |
| | : | |
| ANDREW SAUL, | : | |
| Commissioner of Social Security, | : | |
|     *Defendant*. | : | |

**MEMORANDUM**

JONES, II   J.                                                                                                   May 28, 2020

## I.   BACKGROUND

Scott Andress ("Plaintiff") brought this action for judicial review of the final decision of the Commissioner of the Social Security Administration denying his application for Disability Insurance Benefits. *See* 42 U.S.C. § 405(g). Upon referral from this Court, United States Magistrate Judge David R. Strawbridge prepared a Report and Recommendation ("R&R"), recommending denial of Plaintiff's request for review. *See* ECF No. 15. Plaintiff filed objections to the R&R ("Pl.'s Objs."), to which the Commissioner responded. *See* ECF Nos. 16, 18. Accordingly, the matter is now ripe for review.

## II.   STANDARD OF REVIEW

When objections are filed to the report and recommendation of a magistrate judge, the district court judge must "make a de novo determination of those portions of the report or specified proposed findings or recommendation to which objection is made." 28 U.S.C. § 636(b)(1). *See also* Fed. R. Civ. P. 72(b)(2)–(3) ("a party may serve and file specific written objections to the proposed findings and recommendations"); ("The district judge must determine

de novo any part of the magistrate judge's disposition that has been properly objected to."). The Local Civil Rules applicable to proceedings in this Court further provide that any objections to a magistrate judge's report and recommendation must "specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections." E.D. Pa. Local R. Civ. P. 72.1(IV)(b).

As § 636(b)(1) requires a party objecting to a magistrate judge's report and recommendation to identify "'*portions* of the report or *specified* proposed findings or recommendations to which objection is made,'" the Third Circuit has instructed that "a de novo determination is not always required"; specifically, where the objections are "general in nature" and therefore "lack[] the specificity required by § 636(b)(1)." *Goney v. Clark*, 749 F.2d 5, 6–7 (3d Cir. 1984) (quoting 28 U.S.C. § 636(b)(1)) (emphasis in original). In *Goney*, the court further explained that "providing a complete de novo determination where only a general objection to the report is offered would undermine the efficiency the magistrate system was meant to contribute to the judicial process." 749 F.2d at 7. *See also Snyder v. Bender*, 548 F. App'x 767, 771 (3d Cir. 2013) ("to the extent [the petitioner] failed to make specific objections to portions of the [report and recommendation], the [district] [c]ourt was not required to engage in de novo review") (citing *Goney*).

But even when reviewing objections to a magistrate judge's report and recommendation under a de novo standard, the scope of review applicable to a final determination of the Commissioner of Social Security is still "quite limited." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). Pursuant to 42 U.S.C. § 405(g), "a final agency determination" must be upheld "unless . . . it is not supported by substantial evidence in the record." *Rutherford*, 399 F.3d at 552; *see also Seaman v. Colvin*, 145 F. Supp. 3d 421, 424–25 (E.D. Pa. 2015) ("Judicial

review of the Commissioner's final decision is limited, and this Court is bound by the factual findings of the Commissioner if substantial evidence supports them."). "Substantial evidence has been defined as more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003) (internal quotation marks omitted). The reviewing court "has plenary review of all legal issues." *Seaman*, 145 F. Supp. 3d at 425.

### III.     DISCUSSION

Plaintiff raised seven arguments in his appeal of the final decision of the Commissioner in this case. *See* Pl.'s Br. and Statement of Issues (ECF No. 8) ("Pl.'s Br."). In a thorough and well-reasoned decision, Judge Strawbridge rejected each argument, finding the conclusions of the Administrative Law Judge ("ALJ") below to be supported by substantial evidence. *See generally* R&R. Plaintiff's Objections purport to challenge each of the R&R's findings, yet Plaintiff only repeats the exact same arguments as raised to, and rejected by, Judge Strawbridge. *See* Pl.'s Objs. at 1–4. The Objections set forth no new arguments or analysis, and fail to articulate any specific error in Judge Strawbridge's reasoning. As identified by the Commissioner, the Objections are merely a collection of conclusory statements amounting to nothing more than the tautological argument that "Judge Strawbridge erred by not accepting the arguments in [Plaintiff's] brief." Def.'s Resp. to Pl.'s Objs. at 1. However, while Plaintiff's Objections to the R&R arguably lack "the specificity required by § 636(b)(1)," (*Goney*, 749 F.2d at 7), the Court will nevertheless apply a de novo standard in reviewing Plaintiff's Objections, given the Third Circuit's statement in *Brown v. Astrue* that district courts should conduct a de novo review even where objections to a report and recommendation merely "rehash arguments presented to and considered by the Magistrate Judge." 649 F.3d 193, 195 (3d Cir. 2011)

(internal quotation marks omitted).  Each of the arguments rejected in the R&R and rehashed by Plaintiff in his Objections are therefore reviewed in turn below.

Plaintiff's first objection is that the ALJ gave "inadequate consideration [to] the evidence of [Plaintiff's] impairment."  Pl.'s Objs. at 1.  Plaintiff argues that the ALJ "fail[ed] to address the limitations documented in Plaintiff's Function Report," and complains of her purported "failure to properly address Dr. Gedeon's reports regarding the severity of Plaintiff's back condition, and Dr. McConnell's records regarding [P]laintiff's spinal diagnoses and limitations."  *Id.* at 1–2 (internal citations omitted).  Plaintiff provides no further argument or analysis, and simply refers the Court back to his original Brief already considered by Judge Strawbridge.

In the R&R, Judge Strawbridge explained the flaw in Plaintiff's argument that the ALJ ignored "the limitations documented in Plaintiff's Function Report."  Pl.'s Objs. at 1.  Specifically, the R&R correctly pointed out that Plaintiff's Function Report "was not a medical opinion but rather a questionnaire that was completed by Plaintiff," that "Plaintiff's responses on the form were consistent with his testimony given at the two hearings before ALJ Hardiman," and that there was "no question that ALJ Hardiman was aware of and considered Plaintiff's statements regarding the effect of his condition on his functioning, as she referred to them when she described the hearing testimony."  R&R at 10 (citing ALJ Op. at 8).  Plaintiff's bare-bones objection simply restates the same argument rejected by Judge Strawbridge without substantively responding to the reasoning of the R&R.  That argument fares no better with this Court and is rejected for the same reasons.

Plaintiff's contention that the ALJ failed to "properly address Dr. Gedeon's reports" is also without merit.  Pl.'s Objs. at 1.  Plaintiff's objection refers the Court to pages 13–15 of his original Brief, which march through a collection of notes in Plaintiff's medical records from Dr.

4

Gedeon's pain management clinic that Plaintiff argues were overlooked by the ALJ.  *See id.* at 2.  But an ALJ is not expected "to make reference to every relevant treatment note in a case where the claimant . . . has voluminous medical records," and many of the details Plaintiff points to were in fact expressly considered by the ALJ.  *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001).  For example, Plaintiff's Brief attacks one section of the ALJ's decision as follows: "There is no mention of the diagnoses of sacroliliits [sic], facet syndrome, D[egenerative] D[isc] D[isease] lumbar or lumbosacral, or post laminectomy syndrome."  Pl.'s Br. at 14.  But to the contrary, the ALJ's decision specifically noted: "The claimant's records [] reflect diagnoses of muscle spasm, fibromyalgia/myofa[s]cial pain, ***post laminectomy syndrome***, thoracic/lumbar radiculitis, low back pain, lumbar back pain, S1 joint pain, ***sacroiliitis***, and ***facet syndrome***."  ALJ Op. at 5 (emphasis added).  Moreover, the ALJ concluded that Plaintiff "had the following severe impairment: ***degenerative disk disease***/degenerative joint disease."  *Id.* at 4 (emphasis added); *see also id.* at 10 ("MRI testing in early 2013 showed ***degenerative disc disease of the lumbar spine***.") (emphasis added); *id.* at 11 ("David Hutz, MD completed the state agency physical assessment on April 27, 2012.  Therein, he indicated that the claimant's ***degenerative disc disease of the lumbar spine*** was a severe impairment.") (emphasis added).

Similarly, Plaintiff complains that the ALJ "failed to mention positive Pheasant test[s] and the finding of spasm[s]" in her review of several specific treatment notes, as well as the fact that Plaintiff's gait was described as "slow and cautious" in several others.  Pl.'s Br. at 13–15.  But the ALJ mentioned these items multiple times throughout her decision.  *See* ALJ Op. at 9 ("In March of 2012, [Plaintiff] showed range of motion limitation and a positive Pheasant Test, but his straight leg raise test results were negative."); *id.* at 5 (noting that Plaintiff's records "reflect diagnoses of muscle spasm"); *id.* at 11 (explaining that Plaintiff's records show he "has

spasm, with no identifiable location or intensity noted"); *id.* at 9 (summarizing Plaintiff's medical records from Excel Care Pain Management which stated that "claimant's gait was slow and cautious").

Plaintiff also objects to the level of consideration given by the ALJ to Dr. Jeffrey McConnell's treatment records, referring the Court to pages 16–18 of his Brief, wherein Plaintiff complains that "the ALJ completely left out any reference to Dr. McConnell's records." Pl.'s Br. at 17. However, as was already pointed out in the R&R, the ALJ's decision unequivocally *did* consider those records. *See* R&R at 10 n.4 (citing ALJ Op. at 7); *see also* ALJ Op. at 10 (referring to medical records from OAA Orthopaedic Specialists, Dr. McConnell's practice). Plaintiff's statement that "the ALJ completely left out any reference" to those records is no less false now than when originally rejected by Judge Strawbridge. Pl.'s Br. at 17. Accordingly, for all of the foregoing reasons, Plaintiff's first objection is overruled.

Plaintiff's second objection complains that "the ALJ improperly omitted and glossed over numerous references to muscle spasms and erred in failing to consider evidence of muscle spasm as they relate to underlying diagnoses including degenerative disc disease and facet arthritis." Pl.'s Objs. at 2. But as set forth above, the ALJ expressly considered and made reference to Plaintiff's muscle spasms throughout her decision. She was not required to recount every instance in which muscle spasms were noted in Plaintiff's medical records. Moreover, as the R&R points out, the ALJ's decision regarding Plaintiff's residual functional capacity ("RFC") specified that Plaintiff "must avoid bilateral overhead reaching" due to his testimony that "[h]e could extend and retract his arms and legs and reach overhead; however, his legs could go numb and he gets spasms if he lifts overhead." ALJ Op. at 8; *see also* 20 C.F.R. § 404.1545 (describing RFC assessment procedure). Accordingly, Plaintiff's attempt to characterize this

part of the ALJ's decision as a "rejection of evidence of muscle spasm" rings hollow, and Plaintiff's second objection is overruled. Pl.'s Br. at 20.

Plaintiff's third objection is that the ALJ improperly ignored the portion of the testimony of the Medical Expert ("ME") regarding Plaintiff's need for breaks during a workday. In rejecting this argument, the R&R provided as follows:

> Plaintiff seizes upon the issue of breaks in isolation, but Dr. Owens added these caveats to an opinion in which he found Andress to be capable of far more standing and walking than the ALJ ultimately found – an entirely different backdrop. The ALJ rejected the portion of Dr. Owens's opinion that Andress could stand for four hours and could also have walked for two hours. Instead, the ALJ found that Plaintiff could stand only two hours, could still walk for two hours, but that the remainder of the day – and up to six hours – would involve sitting. At Step Five, the ALJ found that Plaintiff could perform jobs identified by the V[ocational] E[xpert] that were sedentary and required no more than "brief periods of time" walking or standing. (*See, e.g.,* Def. Br. at 9-10, citing DOT definitions for jobs identified by V[ocational] E[xpert] and ALJ). While we take Plaintiff's point that even sedentary jobs may require some standing and walking (Pl. Reply at 17), the ALJ's decision rests upon the identification of jobs that would not require a solid hour of either standing or walking to trigger breaks beyond those ordinarily permitted by employers.

R&R at 13–14. The only substantive response provided to Judge Strawbridge's reasoning in Plaintiff's third objection is the conclusory statement that Plaintiff's alleged need for breaks "would affect the availability of jobs even at the sedentary exertional level." Pl.'s Objs. at 2. But the ALJ's decision rested upon the fact that the "sedentary" representative occupations the Vocational Expert testified Plaintiff could perform involve "sitting most of the time," and only "brief periods of time" standing or walking. Def.'s Resp. to Pl.'s Br. at 9 (ECF No. 12). Those occupations therefore do not implicate any purported need for breaking after an hour of standing or fifteen minutes of continuous walking. As the ALJ then found that "significant numbers" of those jobs existed "in the national economy," even if one were to assume that Plaintiff did require breaks as testified to by the ME, it would have no effect on the outcome of this case. ALJ Op. at 13. Simply put, Plaintiff's argument that such a limitation might "affect the

availability of jobs even at the sedentary exertional level" does not call into doubt any of the pertinent findings underlying the ALJ's decision. It certainly fails to clear the hurdle of establishing that the ALJ's decision is not supported by substantial evidence. Plaintiff's third objection is overruled.

Plaintiff's fourth argument in his original Brief contended that the "ALJ erred in giving greater weight to the opinions of a non-examining reviewer[] than to the opinions of Dr. Gedeon and Dr. McConnell"—both of whom treated Plaintiff. Pl.'s Br. at 23. In the R&R, Judge Strawbridge cogently identified the central flaw in this argument:

> [T]he portion of the record to which Plaintiff directs our attention does not contain *medical opinions* from either Dr. Gedeon or Dr. McConnell but rather reflects particular findings they made. While the ALJ should be cognizant of significant findings of treating and examining physicians, the "findings" themselves need not be "weighed" against an *opinion* from an acceptable medical source regarding the functional limitations of the claimant, which is what Dr. Hutz offered here.
> . . .
>
> Dr. Gedeon, who managed Plaintiff's pain care, and Dr. McConnell, who gave Plaintiff a second opinion regarding the availability of any further surgical options, did not make any judgment about "what [the claimant] can still do despite impairment(s)" and the "physical or mental restrictions" to which the claimant is subject. *See* 20 C.F.R. § 404.1527(a) (defining "medical opinions").

R&R at 15 (emphasis in original). Plaintiff contests these findings in conclusory fashion in his fourth objection, again providing no substantive argument challenging Judge Strawbridge's reasoning. Instead, Plaintiff constructs a straw man argument against the following conclusion the ALJ did not in fact reach: that notations of Plaintiff's treating physicians "need not be considered in the ALJ's establishment of the Plaintiff's residual functional capacity." Pl.'s Objs. at 3. Neither the ALJ nor Judge Strawbridge indicated that findings of Plaintiff's treating physicians can just be ignored when formulating an appropriate RFC. Indeed, this Court has already set forth in detail specific instances in which medical records from those doctors' practices were expressly considered in the ALJ's determination of Plaintiff's RFC. *See supra* at 5–6. Plaintiff's fourth objection is overruled.

Plaintiff's fifth objection proceeds from a faulty premise. In his initial Brief, Plaintiff argued that "the ALJ did not comply with her duty to establish an RFC that includes all credibly established limitations and to use that RFC in hypothetical questions to the V[ocational] E[xpert]." R&R at 17 (citing Pl.'s Br. at 22–23). In rejecting that argument, Judge Strawbridge explained that "the ALJ crafted a largely sedentary RFC and had the benefit of ME testimony that periods of sitting need not be alleviated by any measures beyond the usual breaks afforded in a workplace," that there were "no other established limitations that the ALJ was required to consider," and therefore that Plaintiff had "not met his burden [] to show that the ALJ's RFC finding and the hypothetical question based upon it lacked the support of substantial evidence." R&R at 17. Plaintiff's fifth objection appears to assume that because Judge Strawbridge reached the specific conclusion that Plaintiff had not met his burden of establishing that this part of the ALJ's decision "lacked the support of substantial evidence," it therefore follows that the ALJ did in fact fail "to include credibly established limitations in the RFC finding and . . . hypothetical questions" to some degree, but just not enough to meet the "lacking substantial evidence" standard in Judge Strawbridge's estimation. Pl.'s Objs. at 3 (internal quotation marks omitted). But such an assumption is obviously unwarranted, and this Court agrees with Judge Strawbridge's conclusion that the ALJ did not fail to consider any of Plaintiff's requisite limitations. The only items Plaintiff cites as not having been given proper consideration are Plaintiff's "testimony regarding his limitations regarding sitting, standing and walking" and "the treatment notes of Dr. Gedeon and Dr. McConnell." Pl.'s Objs. at 3. But the ALJ specifically stated that she "***afforded greater deference to the testimony of*** the medical expert and ***the claimant and added greater standing/walking accommodations***[,] as the later testimony and evidence of record support a reduction to these activities." ALJ Op. at 11 (emphasis added). And as set forth above, this Court has already found Plaintiff's argument that the ALJ gave his treating physicians' records insufficient consideration to be without merit. *See supra* at 5–6. Accordingly, Plaintiff's fifth objection is overruled.

Plaintiff's sixth objection concerns the ALJ's treatment of the results of Plaintiff's straight leg raise ("SLR") tests, which assess "the point at which a patient experiences radiating pain while raising their leg from a fully reclined position." R&R at 18. In rejecting Plaintiff's argument concerning the results of Plaintiff's SLR tests, Judge Strawbridge explained as follows:

> The [SLR] findings themselves — positive or negative — are not dispositive of the question of disability. Rather, positive findings are one of several different indicia of radiculopathy which could corroborate Plaintiff's complaints. When confronted by counsel at the hearing with records noting positive SLR results and despite questioning whether all results could be considered positive, Dr. Owens explained that "in either case," he believed there was "very little evidence for radiculopathy in the claimant[.]" (R. 470.) The ALJ, who was previously directed by this Court to employ an ME to shed light on inconsistencies in the evidence, was certainly then permitted to rely upon the testimony of the ME regarding the findings relating to radiculopathy.

R&R at 21. This Court is in agreement with these findings and conclusions of Judge Strawbridge and incorporates the same by reference herein. Plaintiff objects in a single, conclusory sentence that fails to present any serious challenge to the clear logic of Judge Strawbridge's decision. *See* Pl.'s Objs. at 3 ("Plaintiff objects to this finding and submits that the ALJ erred in relying on the testimony of Dr. Owens that was repeatedly contradicted in various findings of positive straight leg raise testing in the record.") (citing Pl.'s Br. at 24–25). Plaintiff's sixth objection is overruled.

Plaintiff's seventh and final objection is that the ALJ failed to give Plaintiff enough credit for his "long and consistent work history . . . from 1985 to 2010." Pl.'s Objs. at 4. As identified in the R&R, Plaintiff's initial Brief "recognizes that the ALJ was aware of his past work history in that she determined he could no[] longer perform his past relevant work" (R&R at 22); his argument is simply that she did not weight it heavily enough when assessing the credibility of his testimony. However, as Judge Strawbridge correctly stated, the "uncontested fact that [Plaintiff] worked up until the time of his June 2010 surgery and did not attempt to work thereafter did not somehow require the ALJ to find him any more limited than she did." R&R at 23. Plaintiff's

objection is nothing more than an expression of his disagreement with the ALJ's ultimate conclusions regarding his physical limitations and how much credibility to afford his testimony. *See* Pl.'s Objs. at 4. But it is not for this Court to assess the credibility of testimony and reweigh the evidence. *See Seaman v. Colvin*, 145 F. Supp. 3d 421, 424–25 (E.D. Pa. 2015) ("Judicial review of the Commissioner's final decision is limited, and this Court is bound by the factual findings of the Commissioner if substantial evidence supports them."). As it is clear that the ALJ's assessment of the credibility of Plaintiff's testimony is supported by substantial evidence, Plaintiff's seventh objection is overruled.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Objections to the Report and Recommendation of the Honorable David R. Strawbridge, United States Magistrate Judge, are overruled and the Report and Recommendation shall be approved and adopted.

An appropriate Order follows.

BY THE COURT:

/s/ C. Darnell Jones, II
C. Darnell Jones, II    J.

11